UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAIME SCOTT,

    Plaintiff,

v.                                    Case No. 8:25-cv-1342-KKM-AEP

KIMBERLY SHARPE BYRD, et al.,

    Defendants.
_____

## ORDER

Pro se plaintiff Jaime Scott moves for a temporary restraining order against Florida judges Kimberly Sharpe Byrd and Dustin Anderson, the Pasco County court system, and Sharyn Mary O'Melia. TRO Mot. (Doc. 3). She also files two motions in support of that TRO motion, *see* (Docs. 10, 19), as well as non-motion filings, *see* (Docs. 9, 13, 17, 28, & 29). Because Scott has not shown a substantial likelihood of success on the merits of any of her claims or that the other equitable factors weigh in her favor, her motion is denied. As in reaching that outcome I conclude that judicial immunity bars some of Scott's claims and I lack subject-matter jurisdiction over the others, I also dismiss her complaint without prejudice.

I. BACKGROUND

This action arises from a neighborhood dispute between Scott and her next-door neighbor, Sharyn O'Melia. According to her sworn complaint, Scott lives with her minor child in Pasco County, Florida. Compl. (Doc. 1) ¶¶ 1–2. She claims that, starting in August 2024, O'Melia "engaged in a . . . campaign of harassment, surveillance, intimidation, defamation, coercion, stalking, voyeurism, and emotional torment directed" toward Scott and her family. *Id.* ¶ 10. Her core complaint seems to be that O'Melia "has installed multiple surveillance devices directed solely" at Scott's home and yard and has shared images captured by these devices with their neighbors. *Id.* ¶¶ 11, 13. She also claims that O'Melia erected a vulgar sign visible from Scott's backyard and that O'Melia coordinated with other neighbors to block the entrance to Scott's property "using a large truck." *Id.* ¶¶ 15, 17; *see also* Scott Decl. ((Doc. 3) at 7–10) at 2; (Doc. 4) (Exhibit 26).

Scott and O'Melia have been in court before. *See* Compl. ¶ 18. In a state case before Judge Kimberly Sharpe Byrd, O'Melia sought and obtained an ex parte injunction against Scott under Florida's anti-stalking law. *See* TRO Mot. at 2; Mot. for Serv. by U.S. Marshal or Clerk Due to Existing Inj. (Doc. 8) at 1; *see also* § 784.0485, Fla. Stat. Scott claims she did not receive notice of this injunction, which

2

became final on December 6, 2024, until it was served at her house on January 15, 2025. TRO Mot. at 3; Scott Decl. at 1. She also claims that Judge Byrd repeatedly violated her due process rights in that proceeding, including by "[the] ongoing restriction of [Scott's] Second Amendment rights, [the] denial of hearings, [the] denial of [access to] records, and [the] denial of all motions to vacate." TRO Mot. at 3. Scott filed her own action against O'Melia in state court in May 2025 seeking a "protective injunction." *Id.* Judge Dustin Anderson denied that motion. (Doc. 1-2) at 32.

Scott sued O'Melia, Judge Byrd, Judge Anderson, and the Pasco County court system in this Court on May 27, 2025. *See* Compl. She alleges under 42 U.S.C. § 1983 that Judges Byrd and Anderson and the Pasco County court system violated her right to due process, unlawfully retaliated against her, and wrongfully refused to recuse themselves. *Id.* ¶¶ 22–28 (Counts I & II). Scott claims under § 1983 that Judge Byrd and the Pasco County court system also violated her Second Amendment rights by enjoining her from possessing firearms. *Id.* ¶¶ 38–40 (Count V). She pleads many claims against O'Melia, including that O'Melia unlawfully surveilled her under § 1983 (Count III), falsely imprisoned her under § 1983 (Count VI), abused process and filed vexatious suits (Count VII), committed intentional

3

infliction of emotional distress (Count X), invaded her privacy and committed voyeurism in violation of § 810.14, Florida Statutes (Count XI), and engaged in cyberstalking and "coordinated electronic harassment" in violation of § 784.048(1)(d), Florida Statutes (Count XII). Compl. ¶¶ 29–33, 41–46, 56–71. And she says under § 1983 that all four defendants[1] violated her First Amendment rights by chilling her speech and abusing legal process (Count IV). *Id.* ¶¶ 34–37.[2]

Scott moves for a temporary restraining order. *See* TRO Mot. She seeks an order "halting all enforcement of the injunction" entered by Judge Byrd, vacating all other orders "issued in the state injunction case," and requiring O'Melia to remove "all cameras, recording devices, or surveillance tools . . . that face or capture [Scott's] home, yard, or private areas" and prohibiting her from installing new cameras, among

---

[1] On June 3, 2025, Scott sought to add Judge Kemba Johnson Lewis as a defendant. *See* (Doc. 23). The document Scott filed, titled "Amendment to Federal Complaint to Add Defendant Judge Kemba Johnson Lewis and Allege Judicial Misconduct," is in the rough form of a complaint but omits any allegations related to the defendants named in the complaint. *See id.* I liberally construe this document as a motion to amend Scott's complaint, and as her complaint is dismissed for the reasons explained below, I deny it as moot.

[2] Scott also includes counts for "Permanent Injunction and Relocation Order" (Count VIII) and "Preservation of Evidence" (Count IX). Compl. ¶¶ 47–55. These "counts" are more in the nature of relief than causes of action. *Cf. Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("[A]ny motion or suit for a traditional injunction must be predicated upon a cause of action . . . . There is no such thing as a suit for a traditional injunction in the abstract.").

other relief. TRO Mot. at 4–5. Scott files several other motions and papers in support of her TRO. *See* (Docs. 9, 10, 17, 19, 28, & 29).

In response to her motion, I ordered Scott to explain (1) "why the judicial defendants are not immune from the requested relief," (2) "on what legal basis the Court has equitable power to 'halt[] all enforcement of the [state court] injunction" and '[v]acate all orders issued in the state injunction case,' " and (3) "why the Court has subject matter jurisdiction over the plaintiff's claims against Defendant Sharyn Mary O'Melia." (Doc. 12) (alterations in the original) (quoting TRO Mot. at 4). Scott has responded. *See* (Doc. 13).

## II. LEGAL STANDARD

To obtain a temporary restraining order, a movant must demonstrate (1) that the movant enjoys a "substantial likelihood of success on the merits"; (2) that the movant will suffer an "irreparable injury" without an injunction; (3) that the injury to the movant outweighs the injury to the enjoined party; and (4) that the injunction is not adverse to the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam).

## III. ANALYSIS

Because Scott fails to show that the four equitable factors weigh in her favor, her motion for a temporary restraining order is denied. Analyzing her likelihood of success on the merits also reveals that absolute judicial immunity bars her claims against the judicial defendants and that subject-matter jurisdiction over the remaining claims against O'Melia is lacking. Accordingly, her complaint is dismissed without prejudice.

### A. Scott Fails To Show That She Is Likely To Succeed On Her Claims Against the Judicial Defendants

"A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court." *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018). Immunity applies when the judge (1) acted in his judicial capacity and (2) did not act in a "clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1240 (11th Cir. 2000) (per curiam) (quoting *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978)). Actions that "constitute[] a normal judicial function" are generally in the judge's judicial capacity. *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (per curiam). And an action is only taken "in the clear absence of all jurisdiction" if the court lacked subject-matter jurisdiction. *Tarver v. Reynolds*, 808 F. App'x 752, 754

(11th Cir. 2020) (per curiam). That is, the judge must have clearly lacked the power to adjudicate the case. *Id.* So long as a judge undertakes a judicial act and does not clearly lack subject-matter jurisdiction, "immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin*, 225 F.3d at 1239.

"This immunity extends to almost every suit seeking injunctive relief." *Johnson v. Crippen*, No. 8:24-CV-2164-KKM-TGW, 2025 WL 278387, at *1 (M.D. Fla. Jan. 23, 2025) (citing 42 U.S.C. § 1983). Injunctive relief against a state-court judge is available only if the judge "violated a declaratory decree or declaratory relief [is] otherwise [] unavailable" and there is no adequate remedy at law. *Tarver*, 808 F. App'x at 754; *see Bolin*, 225 F.3d at 1242. State appellate review is an adequate legal remedy. *See Sibley*, 437 F.3d at 1073–74.

Based on the evidence Scott has submitted, immunity bars her claims against the state judges. She offers no basis for concluding that their challenged acts—such as issuing an injunction, denying an injunction, refusing to recuse, or dismissing Scott's motions—are not normal judicial functions. *See* Compl. ¶¶ 23–28; *Sibley*, 437 F.3d at 1070. Nor does Scott show that the judges acted with a clear lack of subject-matter jurisdiction. Indeed, she claims Judge Byrd enjoined her under

7

§ 784.0485, Florida Statutes, which gives a Florida circuit court judge jurisdiction to grant an ex parte temporary injunction to prevent stalking. *See* Mot. for Serv. by U.S. Marshal or Clerk Due to Existing Inj. (Doc. 8) at 1. Judicial immunity thus bars her claims against the judges as to damages.

She likewise fails to show that she lacks an adequate remedy at law such that injunctive relief is available. State appellate review is an adequate legal remedy, *see Sibley*, 437 F.3d at 1073–74, and a review of the state court docket[3] reveals that Scott has availed herself of that remedy, *see* Notice of Appeal, *O'Melia v. Scott*, No. 512024DR004221DRAXWS (Fla. 6th Cir. Ct. May 22, 2025). Accordingly, judicial immunity bars her demand for injunctive relief. And as her claims against the court system are based on the same acts, absolute quasi-judicial immunity bars them. *See Jenkins v. Clerk of Court*, 150 F. App'x 988, 990 (11th Cir. 2005) (per curiam) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process."); *Sturkey v. Florida*, No. 8:24-CV-709-KKM-TGW, 2024 WL 1606893, at *3 (M.D. Fla. Mar. 25, 2024).

---

[3] Courts may take judicial notice of court records. *See, e.g., Griffin v. Verizon Commc'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018) (per curiam).

Scott makes several arguments in response. First, she contends that judicial immunity does not apply because the judges acted based on fraud and without due process, citing *United States v. Throckmorton*, 98 U.S. 61 (1878), and *Valdez v. City & County of Denver*, 878 F.2d 1285 (10th Cir. 1989). *See* (Doc. 13) at 1–2. *Throckmorton* holds that "for fraud to lay a foundation for an independent action, it must be such that it was not in issue in the former action nor could it have been put in issue by the reasonable diligence of the opposing party." *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985) (per curiam) (citing *Throckmorton*, 98 U.S. 61). Fraud or misrepresentations intrinsic to the action—such as perjury—do not void a judgment. *See id.* The fraud that Scott alleges is of this sort, including "failure to disclose related cases," "fraudulent use of secret recordings," and "material omissions to the court." (Doc. 19) at 2. Yet even if they did render the orders here void, these sorts of alleged misdeeds do not vitiate subject-matter jurisdiction such that a judge would lose judicial immunity. And *Valdez* is not on point—it does not involve a suit against a judge. *See generally* 878 F.2d 1285.

Second, Scott argues that the judicial defendants were not performing judicial acts because (1) "[d]enying access to court records is an administrative act, not a judicial one," (2) "the injunction was based on perjured claims and unlawful

evidence," and (3) "the judicial defendants engaged in unconstitutional conduct outside their judicial role" and "knowingly participate[d] in or enable[d] due process violations." (Doc. 13) at 2. The authorities that Scott relies on are again off base.[4] Controlling access to court records by sealing or otherwise is a judicial function in which "[t]he judge is the primary representative of the public interest in the judicial process." *Diaz-Granados v. Wright Med. Tech., Inc.*, No. 614CV1953ORL28TBS, 2016 WL 1090060, at *2 (M.D. Fla. Mar. 21, 2016) (quoting *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, No. Civ. 1:96-cv-3052-WCO, 184 F. Supp. 2d 1353, 1363 (N.D. Ga. Feb. 15, 2002)). And judicial acts do not become any less judicial acts because they are based on impermissible evidence or are otherwise unlawful. *See Bolin*, 225 F.3d at 1239. Scott has not shown that judicial immunity is inapplicable.

---

[4] *Forrester v. White* holds that absolute immunity did not protect a judge from a § 1983 action based on the demotion and discharge of a court employee. 484 U.S. 219, 229 (1988). *Dennis v. Sparks* holds that conspirators who conspired with a judge to obtain an illegal injunction are not immune from suit under § 1983, 449 U.S. 24, 27–29 (1980), and does not hold that "when judges knowingly participate in or enable due process violations, they lose immunity," (Doc. 13) at 2. Neither case is instructive here.

Having reviewed all of Scott's filings, I conclude that she has not shown a substantial likelihood of success on the merits of her claims against the judicial defendants.

### B. Scott Has Not Shown Subject-Matter Jurisdiction Over Her Claims Against O'Melia

Scott fails to show that subject-matter jurisdiction exists over her claims against O'Melia, so she is not likely to succeed on the merits of those claims. In her response to this Court's order, Scott claims subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights). (Doc. 13) at 5–6. Neither statute confers jurisdiction. And I decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Scott's state-law claims.

Subject-matter jurisdiction is absent in Scott's federal claims against O'Melia because those claims are "so insubstantial, implausible, . . . or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974)). Scott's federal claims against O'Melia arise exclusively under the federal Constitution, and she cites only 42 U.S.C. § 1983 as a statutory basis for her claims. Compl. ¶¶ 29–33 (Count III – right to privacy);

11

*id.* ¶¶ 34–37 (Count IV – First Amendment and Due Process); *id.* ¶¶ 41–42 (Count VI – arguably Fourth Amendment). Scott further alleges that O'Melia is a private individual. *Id.* ¶ 6. Yet private individuals acting as such cannot violate the federal Constitution. *See Howard v. Wal-Mart*, 175 F. App'x 282, 283 (11th Cir. 2006) (per curiam) ("The federal constitution does not protect against injuries by purely private individuals—that is, individuals who cannot be considered as acting for state or local government."). Accordingly, Scott's constitutional claims against O'Melia are so "completely devoid of merit as not to involve a federal controversy," so neither 28 U.S.C. § 1331 nor § 1343 provide jurisdiction. *Citizens for a Better Env't*, 523 U.S. at 89 (quoting *Oneida Indian Nation*, 414 U.S. at 666).

Scott belatedly attempts to cure this problem by citing another federal statute, 18 U.S.C. § 2261A, and by trying to cast O'Melia as a state actor. (Doc. 13) at 5–6. Yet § 2261A is a criminal statute, which Scott may not enforce, *see Gerbing v. I.T.T. Rayonier Inc.*, 332 F. Supp. 309, 310 (M.D. Fla. 1971) ("[C]riminal statutes can neither be enforced by civil action nor by private parties." (citation omitted)), and, in any event, Scott may not amend her complaint in a brief, *see Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). No evidence in Scott's filings indicates that O'Melia conspired with the judicial defendants, nor does

Scott allege such a jurisdictional theory in her complaint. Accordingly, subject-matter jurisdiction over her federal claims is lacking.

Though Scott neglects to cite any jurisdictional basis for her Florida-law claims, 28 U.S.C. § 1367(a) would provide supplemental jurisdiction over those claims were there jurisdiction over her federal claims. But because, as explained below, the claims against the judicial defendants must be dismissed and subject-matter jurisdiction over her other federal claims is lacking, I decline to exercise supplemental jurisdiction over her state-law claims. *See id.* § 1367(c)(3).

Because judicial immunity bars Scotts claims against the judicial defendants and I lack subject-matter jurisdiction over her claims against O'Melia, Scott has failed to show a likelihood of success on the merits.

### C. Scott Fails To Show Any Of The Other Three Factors Support Granting A Temporary Restraining Order

Even if she had shown a likelihood of success on the merits, Scott's motion would still be due to be denied. Scott does not explain in her TRO motion that she will suffer an "irreparable injury" without an injunction, that the injury to her outweighs the injury to the judicial defendants and O'Melia, or that the injunction is not adverse to the public interest. *Schiavo*, 403 F.3d at 1225–26. "Failure to show

any of the four factors is fatal." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Accordingly, the other three factors each independently support denying Scott's motion.

### D. Scott's Complaint Must Be Dismissed

Analyzing Scott's likelihood of success on the merits reveals that (1) judicial immunity bars her claims against the judicial defendants, and (2) I lack subject-matter jurisdiction over her claims against O'Melia. Because I decline to exercise supplemental jurisdiction over her state-law claims, *see* 28 U.S.C. § 1367(c)(3), dismissal of her whole complaint without prejudice is proper. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Cuyler v. Florida*, No. 8:25-cv-1120-KKM-AAS, 2025 WL 1359061, at *1 (M.D. Fla. May 9, 2025) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991))).

After moving for a temporary restraining order, Scott also filed an "Amendment to Federal Complaint" "to include Judge Kemba Johnson Lewis" as a defendant. (Doc. 26) at 1. The document follows the form of a complaint, and the clerk docketed it as such. An amended complaint renders an earlier filed complaint

"a legal nullity." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Because Scott's "Amendment" contains no claims against O'Melia, Judge Byrd, or Judge Anderson, it moots out her motion for a temporary restraining order if it is an amended complaint. Yet because pro se filings are liberally construed, *see Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam), and it does not seem that Scott intended to abandon her claims against O'Melia, Judge Byrd, or Judge Anderson, *see, e.g.*, (Docs. 28 & 29), I construe the amendment as a motion to amend her complaint and deny it as moot.[5]

## IV. CONCLUSION

Accordingly, the following is **ORDERED**:

1. The plaintiff's Emergency Motion for Temporary Restraining Order, Motion to Vacate State Injunction (Doc. 3) is **DENIED**.

2. The plaintiff's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**. The plaintiff may file an amended complaint no later than June 25, 2025.

---

[5] If Scott's filing were best read as an amended complaint displacing her prior complaint, it would be subject to dismissal without prejudice for the same reasons as the claims against Judge Byrd and Judge Anderson. *See Cuyler*, 2025 WL 1359061, at *1.

3. The plaintiff's Motion to Escalate Emergency TRO for Immediate Review by District Judge (Doc. 10) is **DENIED AS MOOT**.

4. The plaintiff's Motion to Acknowledge Fraud Upon the Court and Misrepresentation of Material Facts in Prior State Proceedings (Doc. 19) is **DENIED AS MOOT**.

5. The plaintiff's construed Motion to Amend (Doc. 26) is **DENIED AS MOOT**.

**ORDERED** in Tampa, Florida, on June 11, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge

3. The plaintiff's Motion to Escalate Emergency TRO for Immediate Review by District Judge (Doc. 10) is **DENIED AS MOOT**.

4. The plaintiff's Motion to Acknowledge Fraud Upon the Court and Misrepresentation of Material Facts in Prior State Proceedings (Doc. 19) is **DENIED AS MOOT**.

5. The plaintiff's construed Motion to Amend (Doc. 26) is **DENIED AS MOOT**.

**ORDERED** in Tampa, Florida, on June 11, 2025.

*[signature]*
Kathryn Kimball Mizelle
United States District Judge