# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAIME SCOTT,

      Plaintiff,

v.                              Case No. 8:25-cv-1342-KKM-AEP

KIMBERLY SHARPE BYRD et al.,

      Defendants.

_____

## ORDER

On December 19, 2025, the United States Magistrate Judge entered a Report and Recommendation, recommending denying Plaintiff Jaime Scott's motion for entry of clerk's default, granting Defendant Sharyn Mary O'Melia's motion to dismiss, granting Defendants Beth Fahey, Stacey Osborne, and Adrian Ramberac's motion to dismiss, and closing this case. R. & R. (Doc. 87). Scott timely objects. Objs. (Doc. 88). I adopt the Report and Recommendation with modifications for the reasons stated below.

## I.    BACKGROUND

This action arises from a neighborhood dispute between Scott and her next-door neighbor, Sharyn O'Melia. According to her sworn original complaint, Scott lives with her minor child in Pasco County, Florida. Compl. (Doc. 1) ¶¶ 1–2. She claims that, starting in August 2024, O'Melia "engaged in a . . . campaign of harassment, surveillance, intimidation, defamation,

coercion, stalking, voyeurism, and emotional torment directed" toward Scott and her family. *Id.* ¶ 10. Her core complaint seems to be that O'Melia "has installed multiple surveillance devices directed solely" at Scott's home and yard and has shared images captured by these devices with their neighbors. *Id.* ¶¶ 11, 13. She also claims that O'Melia erected a vulgar sign visible from Scott's backyard and that O'Melia coordinated with other neighbors to block the entrance to Scott's property "using a large truck." *Id.* ¶¶ 15, 17; *see also* Scott Decl. ((Doc. 3) at 7–10) at 2; (Doc. 4) (Exhibit 26).

Scott and O'Melia have been in court before. *See* Am. Compl. (Doc. 35) ¶ 1 (Statement of Facts). In a state case before Judge Kimberly Sharpe Byrd, O'Melia sought and obtained an ex parte injunction against Scott under Florida's anti-stalking law. *See id.* ¶ 2 (Defendants); *id.* ¶¶ 1–2 (Statement of Facts); *see also* § 784.0485, Fla. Stat. Scott claims that she did not receive notice of this injunction, which became final on December 6, 2024, until it was served on January 15, 2025. Am. Compl. ¶ 5 (Statement of Facts). This final judgment was "amended . . . on December 9, 2024, removing [Scott's] Second Amendment rights without a corresponding motion." *Id.* ¶ 2 (Defendants). The case "was reopened on multiple occasions . . . without any documented closure entries in between" and without "legal basis" or "motions or notice." *Id.* ¶ 7 (Statement of Facts). One entry was "docketed out of order . . . suggesting

intentional manipulation to backfill jurisdiction retroactively." *Id.* ¶ 8 (Statement of Facts). Scott claims that throughout the case "[d]ocket entries for reopening and motions were fabricated, mislabeled, or backdated, demonstrating a pattern of judicial and clerical misconduct." *Id.* ¶ 9 (Statement of Facts).

On May 15, 2025, Scott moved in state court to vacate the injunction, which she believes is void. *Id.* at 5. The motion was "granted, then reversed without cause" on May 19, 2025. *Id.* Scott appealed the denial of her motion to vacate on May 22, 2025, thus "divesting the trial court of jurisdiction." *Id.* ¶ 10 (Statement of Facts). "Despite this, the trial court continued issuing rulings (including an Emergency Stay denial, venue decisions, and order denials) between May 23 and June 6, 2025, in violation of the divestiture rule and constitutional due process." *Id.* ¶ 11 (Statement of Facts). On June 18, 2025, the Florida appellate court dismissed Scott's appeal "because [Scott] could not attach a copy of the denial order—which was never served." *Id.* ¶ 14 (Statement of Facts). "This failure of service by the lower court obstructed [Scott's] appellate rights and constitutes denial of access to the courts under the First and Fourteenth Amendments." *Id.* ¶ 15 (Statement of Facts). "Three

state judges and three Clerk officials[1] allowed or participated in docket manipulation, post-divestiture rulings, and systematic denial of notice, service, and access to records." *Id.* ¶ 16 (Statement of Facts). During this time, "O'Melia escalated stalking behavior in sync with court filings and denials." *Id.* ¶ 17 (Statement of Facts). Scott believes that O'Melia's "actions appear coordinated with judicial actors and were rewarded with unlawful injunction enforcement." *Id.*

Scott sued O'Melia, Judge Byrd, Judge Dustin Anderson, and the Pasco County court system in this Court on May 27, 2025. *See* Compl. She moved for a temporary restraining order, Mot. for TRO (Doc. 3), which I denied, Order (Doc. 30). In the order denying the motion for a temporary restraining order, I also dismissed Scott's initial complaint without prejudice because absolute judicial immunity barred her claims against the judicial defendants, and because I lacked subject matter jurisdiction over the remaining claims against O'Melia. *See* Order at 6.

On June 25, 2025, Scott filed an amended complaint asserting seven Counts. In Count I, she alleges, under 42 U.S.C. § 1983, that O'Melia and

---

[1] Fahey, Ramberac, and Osborne all work for the Pasco County Clerk's Office. *See* Am. Compl. ¶¶ 5–7 (Defendants).

4

Judge Byrd[2] violated Scott's "Fourteenth Amendment Due Process Rights." *See* Am. Compl. ¶¶ 1–2 (Defendants), *id.* at 8. In Count II, Scott claims under § 1983 that O'Melia, Fahey, Ramberac, and Osborne violated Scott's First and Fourteenth Amendment rights by denying her access to the courts. *See id.* ¶¶ 1, 5–7 (Defendants); *id.* at 8. Count III alleges, under § 1983, that Judge Byrd committed fraud upon the court. *See id.* ¶ 2 (Defendants); *id.* at 8. Count IV claims, under 42 U.S.C. § 1985, that O'Melia, Fahey, Ramberac, and Osborne conspired to deprive Scott of "equal protection and due process." *See id.* ¶¶ 1, 5–7 (Defendants); *id.* at 9. In Count V, Scott alleges, under 42 U.S.C. § 1986, that Judges Byrd, Kemba Lewis, and Anderson neglected to prevent civil rights violations. *See id.* ¶¶ 2–4 (Defendants); *id.* at 9. In Count VI, Scott seeks a declaratory judgment, purportedly against Fahey, Ramberac, and Osborne, that various "judicial actions," including the "Final Judgment entered December 6, 2024," are void. *See id.* ¶¶ 5–7 (Defendants); *id.* at 9. Count VII requests injunctive relief under *Ex parte Young* but does not identify against

---

[2] In her "Causes of Action," Scott does not delineate which Counts are asserted against which defendants. *See* Am. Compl. at 8–9. Instead, she appears to assign Counts to the defendants in a separate "Defendants" section to her complaint. *See, e.g., id.* ¶ 1 (Defendants) (Including "[s]ee Counts I, II, IV" when discussing O'Melia.). It is unclear what exactly Scott is alleging because there are inconsistencies even with this approach. *Compare id.* ¶¶ 2–4 (Defendants) (failing to assign Count IV to any of the judicial defendants), *with id.* at 9 (Count IV) (alleging that there was "coordinated misconduct involving: Clerks, judges, and the opposing party").

whom such an injunction is sought. *See id.* ¶¶ 1–7 (Defendants); *id.* at 9 (requesting the injunction against "state actors").

The relief Scott seeks includes declaring void: a state court's final judgment, "the attempted service of process on January 13, 2025," and "all subsequent orders, hearings, and docket entries issued after May 22, 2025." *See id.* ¶¶ 1–3 (Prayer for Relief). Similarly, Scott requests "a permanent injunction prohibiting any further enforcement, reinstatement, or reference to the December 2024 injunction in any future proceeding." *Id.* ¶ 4 (Prayer for Relief). Scott also requests a permanent injunction against O'Melia that would bar O'Melia from "installing or maintaining" "surveillance cameras, monitoring devices, or recording equipment" at certain heights or that are "capable of capturing audio or video in the direction of [Scott's] home, yard, or private dwelling areas." *Id.* ¶ 5 (Prayer for Relief). This injunction should also prohibit O'Melia "from posting, displaying, or distributing any sexually explicit, lewd, or lascivious signs or materials visible from or directed toward [Scott's] residence." *Id.* Scott requests a further injunction "directing Defendants to cease retaliation, obstruction, or denial of records access and to restore [Scott's] access to all public filings and judicial orders related to her case." *Id.* ¶ 6 (Prayer for Relief). Lastly, Scott requests damages, costs, and attorney's fees. *Id.* ¶¶ 7–8 (Prayer for Relief).

O'Melia timely answered the amended complaint, (Doc. 39), before then filing a "Motion to Dismiss Case" on September 2, 2025, (Doc. 70). Scott did not respond. Scott served Fahey, Osborne, and Ramberac on September 2, 2025. (Docs. 74–76). They failed to timely respond and filed a motion to dismiss the amended complaint on October 28, 2025. *See* (Doc. 84). Prior to their untimely motion to dismiss, Scott moved for entry of clerk's default. Mot. for Entry of Clerk's Default (Doc. 81). Scott responded in opposition to Fahey, Ramberac, and Osborne's motion to dismiss. Resp. (Doc. 86).

## II.   LEGAL STANDARDS

### A. Review of a Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1). If a party files a timely and specific objection to a finding of fact by a magistrate judge, the district court must conduct a de novo review with respect to that factual issue. *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992). The district court reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994) (per curiam); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

## B. Motion for Entry of Clerk's Default

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). But the serving party must establish that the defaulting party was properly served before a default may be entered. *See Colclough v. Gwinnett Pub. Schs.*, 734 F. App'x 660, 662 & n.2 (11th Cir. 2018) (per curiam); *United States v. Demesmin*, No. 6:17-CV-36-ORL-31KRS, 2018 WL 1988864, at *2 (M.D. Fla. Mar. 14, 2018).

## C. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

8

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, courts accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

## III. ANALYSIS

Regarding Scott's motion for entry of clerk's default, the Magistrate Judge concludes that Scott failed to properly serve the judicial defendants: Judge Kimberly Sharpe Byrd, Judge Dustin Anderson, and Judge Kemba Johnson Lewis. R. & R. at 6. When considering the motions to dismiss, the Magistrate Judge identifies several fatal problems with Scott's amended complaint. *See id.* at 7–11. Each count relies on vague, conclusory allegations and fails to allege sufficient facts to state a plausible claim for relief. *See id.* at

9

8–11 ("At bottom, Plaintiff's . . . Amended Complaint as a whole does not state a plausible claim for relief."). Further, Count III fails to allege a federal constitutional or statutory right that Defendants violated. *Id.* at 7. In Count IV, Scott fails to allege that she is a person or class of persons deprived of the equal protection of the laws. *Id.* at 10. Without a viable claim under 42 U.S.C. § 1985 (Count IV), Scott's claim under 42 U.S.C. § 1986 (Count V) fails. *Id.* at 9–10. Count VI is not a cause of action. *Id.* at 10. Count VII seeks injunctive relief under the *Ex parte Young* doctrine but, because Scott challenges past conduct, the doctrine is inapplicable. *Id.* at 11.

To begin, Scott admits that her objections are "not written as a traditional legal brief," because she perceives that the Report and Recommendation "itself does not function as one." Objs. at 1. Instead, Scott provides a sprawling list of numbered objections, mostly in the form of bullet points, that covers forty-nine pages. She does not provide pinpoint citations to the operative complaint, the Report and Recommendation, or to any other document that she (often vaguely) references to assist the Court in considering the validity of her objections. Because of this formatting and excessive length, Scott's Objections violate Local Rule 3.01(b).

Scott raises twenty-one[3] objections, most of which do not engage with the Magistrate Judge's analysis. *See, e.g.*, Objs. at 2–3 (arguing the Magistrate Judge failed to analyze the operative complaint); *id.* at 3–4 (complaining about the Magistrate Judge's description of the case as arising from a neighborhood dispute); *id.* at 7–8 (taking issue with the Magistrate Judge's diction); *id.* at 26–27 (conflating the Magistrate Judge's recommendation to grant the relief sought in O'Melia's motion to dismiss with an endorsement of her motion's specific arguments); *id.* at 32 (arguing that this Court cannot analyze Scott's issues completing service of process because there were allegedly similar service issues in the underlying state case); *id.* at 33 (complaining that the Magistrate Judge recommends dismissing Scott's case even though Scott's filings are purportedly more organized than O'Melia's).

Scott raises one real objection to the Magistrate Judge's default analysis—that the Magistrate Judge applied the wrong standard to evaluate whether Scott properly served the judicial defendants. *Id.* at 4–5.

Overall, the scattershot, bullet point nature of her objections makes it difficult to discern Scott's arguments. As best as can be ascertained, Scott raises only a handful of cognizable objections to the Magistrate Judge's 12(b)(6)

---

[3] Scott numbered her objections and skipped number nineteen. *See* Objs. at 34–35. Thus, although there is an objection labeled as the twenty-second objection, it is the twenty-first. Objs. at 39.

analysis: the complaint alleged sufficient specific facts to state a plausible claim, Scott does challenge continuing violations, O'Melia is a state actor, and the magistrate judge should have analyzed Scott's §§ 1985 and 1986 claims as § 1983 claims. *See, e.g.*, *id.* at 5–7, 9–15, 20–23, 39–40. None of the objections persuade. Notably, aside from claiming that her factual allegations were sufficient, Scott does not address the Magistrate Judge's analysis regarding the other deficiencies with Counts III–VI.

### A. Service of the Defendants

Scott claims that, because the judicial defendants are sued in their official capacity, the Magistrate Judge should have analyzed her efforts to serve process on them under Federal Rule of Civil Procedure 4(j)(2) instead of Rule 4(e). *Id.* at 5. She provides no support for this proposition. That said, district courts in the Eleventh Circuit are split on whether Rule 4(j)(2) or Rule 4(e) controls service on individuals sued in their official capacity. *See Felton v. Winter Park Police Dep't*, No. 6:22-CV-898-RBD-DAB, 2022 WL 8216907, at *3 n.3 (M.D. Fla. Aug. 2, 2022) (collecting cases), *report and recommendation adopted*, No. 6:22-CV-898-RBD-DAB, 2022 WL 4396375 (M.D. Fla. Sept. 23, 2022).

I need not decide which standard governs because, under either, Scott failed to properly serve the judicial defendants. Scott served the judicial

defendants via certified mail. (Doc. 77). The Magistrate Judge correctly concludes that certified mail is insufficient under Rule 4(e), which Scott does not contest.

Service via certified mail is also insufficient under Rule 4(j)(2), which authorizes a plaintiff to serve a state or local government by either "delivering a copy of the summons and of the complaint to its chief executive officer," or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." "The definition of 'deliver[y]' under Rule 4(j)(2) . . . excludes certified mail." *Yaniga v. Fla. Dep't of Transp.*, No. 8:11-CV-1371-T-23TBM, 2011 WL 6338910, at *1 (M.D. Fla. Dec. 19, 2011). Nor does Florida law permit original service by certified mail. *Transp. & Gen. Ins. Co. v. Receiverships of Ins. Exch. of Ams., Inc.*, 576 So. 2d 1351, 1352 (Fla. 1st DCA 1991) ("There is no statutory authority, or authority under Rule 1.070, Florida Rules of Civil Procedure, for [service] only by certified mail, as was done here."); *see Yaniga*, 2011 WL 6338910, at *1 (explaining that "no statute, either federal or state, permits service upon a state agency by certified mail"); *see also* § 48.031(1)(a), Fla. Stat. ("Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint."). Scott does not (and cannot) explain how her service was proper under Rule 4(j)(2).

## B. Failure to State a Plausible Claim

### i.    Sufficient Specific Factual Allegations

Scott repeatedly objects to the Magistrate Judge's conclusion that the amended complaint relies on vague, conclusory allegations and fails to allege sufficient facts to state a plausible claim for relief. *See, e.g.*, Objs. at 12–15. These objections are merely bald claims that the facts in the complaint are sufficient. At most, Scott lists some of the same vague facts in her complaint and states, for example, that they "establish classic violations of: procedural due process, the First Amendment right of access to the courts, and the integrity of the judicial proceedings." *Id.* at 13. She is wrong. Although the Magistrate Judge did not describe it as such, Scott's complaint is an impermissible shotgun pleading.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun

14

pleadings.' " *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). A shotgun pleading "exact[s] an intolerable toll on the trial court's docket." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (explaining that a district court's inherent authority includes dismissing a complaint as a shotgun pleading but that a district court must "sua sponte allow a litigant one chance to remedy such deficiencies"); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

The "unifying characteristic of all types of shotgun pleadings," is that "they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" are among the "most common" forms of shotgun pleading. *Id.* at 1321–22. Another form is "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id.* at 1323.

Scott's amended complaint is a quintessential shotgun pleading. For example, Count II, which asserts a § 1983 claim for "Denial of Access to Court,"

alleges that unspecified defendants, presumably Fahey,  Remberac, and Osborne, "[f]ail[ed] to serve final orders necessary for appeal," "[a]lter[ed] motion titles and docket entries," and "[d]ismiss[ed] appeals for failure to attach orders never received," which "burdened [Scott's] right to petition the government and to access the courts for redress." Am. Compl. (Doc. 35) at 8 (Count II). Although Scott includes some general factual allegations elsewhere in the complaint, even construing those as incorporated into Count II does not provide sufficient notice to the defendants because these allegations are also conclusory and vague and often do not specify which defendants committed which acts. *See id.* at 6–8. As the Magistrate Judge identified, *see* R. & R. at 11, this issue infects every count in the amended complaint.

### ii.    Challenging Continuing Harm

Scott argues that, contrary to the Magistrate Judge's conclusion, her claim for injunctive relief under *Ex parte Young* challenges the "continuing harm" or "unconstitutional condition[s]" that she suffers because of the actions of the defendants. *See* Objs. at 5–7, 23–25, 37–38. The harms or violations that Scott identifies consist of alleged actions by O'Melia, perceived violations of Federal Rule of Civil Procedure 5.2 in this action, delays in a separate civil proceeding, the "enforcement and recognition of a void injunction," and "denial of access to functioning courts." *See id.* Most of these purported harms outstrip

16

the allegations in the amended complaint's *Ex parte Young* claim (Count VII), which "requests injunctive relief: Prohibiting enforcement of the void December 2024 injunction[, p]reventing state actors from reviving the void case or taking retaliatory action[, and c]ompelling record disclosure to enable access to courts." Am. Compl. at 9 (Count VII).

I need not decide whether Scott seeks relief from ongoing unconstitutional conduct because the allegations are unintelligibly vague. As discussed above, Count VII is not free from Scott's shotgun pleading deficiencies. Indeed, it is unclear whom Scott seeks to assert this claim against as she names no defendants in Count VII and, in her separate list of the defendants, does not identify any as a subject of Count VII. *See id.* at 6–7 (Defendants), 9 (Count VII). The vague allegations leave it unclear how any of the defendants would be proper *Ex parte Young* defendants. *See Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) (holding that *Ex parte Young* is available against state officers "only when those officers are 'responsible for' a challenged action and have 'some connection' to the unconstitutional act at issue." (quoting *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988))).

17

### iii.    O'Melia Operating as a State Actor

Scott claims that O'Melia is a state actor and has admitted to conduct that renders her one. Objs. at 20–23. Scott does not provide any citations to these admissions and, regardless, the amended complaint is devoid of allegations that, taken to be true, would make Scott a state actor. *See generally* Am. Compl. This objection is unavailing.

### iv.    Analyzing §§ 1985 and 1986 Claims Under § 1983

Scott objects that because courts must construe a pro se plaintiff's complaint liberally, the Magistrate Judge should have considered whether her §§ 1985 and 1986 claims were viable under § 1983. Objs. at 39–40. She provides no authority that supports such an expansive view of the Court's obligation to construe Scott's pleadings liberally. To the contrary, "even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). I overrule this objection.

### C. *Rooker-Feldman*

Although Scott preemptively claims that *Rooker-Feldman* is not applicable, *see* Am. Compl. at 5, and it was not discussed by the Magistrate

Judge, *Rooker-Feldman* precludes at least some of Scott's claims. The doctrine bars "cases in which federal litigants seek reversal of state court decisions." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285 (11th Cir. 2018). A claim that was "actually adjudicated by a state court" or that is " 'inextricably intertwined' with a state court judgment" is barred. *Id.* at 1286. A claim is inextricably intertwined "if it asks to effectively nullify the state court judgment." *Id.* (citation modified). A pending appeal of the relevant state judgment will preclude the application of *Rooker-Feldman*. *See Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009). But "if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended." *Id.* at 1275 (citation modified).

Scott asks me to declare a state court judgment void and seeks other relief that would effectively nullify the judgment, such as enjoining the "enforcement, reinstatement,[4] or reference to" the state court's injunction. *See* Am. Compl. at 9 (Counts VI and VII); *id.* ¶¶ 1, 4 (Prayer for Relief). Scott claims that the final judgment is void because the "state actors . . . acted without jurisdiction," thus there is an exception to *Rooker-Feldman*. Not so. *See Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009) (per curiam) ("Other circuits

---

[4] Yet again, Scott's amended complaint raises more questions than it answers. Because of her cursory, vague allegations, it is unclear if the injunction that Scott views as the source of at least some of her constitutional injuries is even still in effect.

have recognized an exception to the doctrine where the state court judgment is void *ab initio* due to the state court's lack of jurisdiction, but our circuit has never adopted that exception." (citation modified)); *Kasbekar v. Ivy Station Cmty. Ass'n*, No. 20-10620, 2022 WL 17247551, at *3 (11th Cir. Nov. 28, 2022) (per curiam) (noting the continued lack of such an exception in the Eleventh Circuit).

Although Scott had an appeal pending at the time that she commenced this action, the appeal was of a denial of her motion to vacate the injunction, which Scott filed on May 15, 2025. Am. Compl. at 5. "That is the only ruling [Scott] attempted to appeal." *Id.* The final judgment that Scott asks me to declare void was amended on December 9, 2024. *Id.* ¶ 5 (Statement of Facts). Thus, her window to appeal expired on January 8, 2025. *See* Fla. R. App. P. 9.110(b). Scott never appealed the final judgment. Thus, for *Rooker-Feldman* purposes, the state proceedings ended before Scott sued in this Court. *Cf. Casey v. Bank of Am., N.A.*, No. 13-60983-CIV, 2013 WL 12126306, at *3 (S.D. Fla. Nov. 7, 2013) ("A motion to vacate 'does not affect the finality of a judgment or decree or suspend its operation.'" (citing Fla. R. Civ. P. 1.540(b) and *Curbelo v. Ullman*, 571 So. 2d 443, 444 (Fla. 1990) (distinguishing a Rule 1.540(b)

motion from appellate review)). Because *Rooker-Feldman* would render amendment of Counts VI and VII futile, I dismiss them with prejudice.

### D. Quasi-Judicial Immunity

For the same reasons that I explained in my previous order denying Scott's motion for a temporary restraining order and dismissing her complaint, *see* Order at 8–10, the claims against Fahey, Ramberac, and Osborne are barred by quasi-judicial immunity. *See Jenkins v. Clerk of Court*, 150 F. App'x 988, 990 (11th Cir. 2005) (per curiam) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process."); *Sturkey v. Florida*, No. 8:24-CV-709-KKM-TGW, 2024 WL 1606893, at *3 (M.D. Fla. Mar. 25, 2024). Much like Scott's factual allegations in her original complaint, the allegations against Fahey, Ramberac, and Osborne consist of actions integral to the judicial process. *See* Am. Compl. ¶¶ 5–7 (Defendants) (alleging that they refused access to records, provided incorrect advice regarding Scott's "procedural options," relayed requests from Scott "in bad faith," manipulated docket entries, and failed to correct "fabricated" pleadings). The matters of restricting access to judicial records, managing the docket, determining whether and how to respond to docket entries that may contain errors or fabrications, and interacting with unrepresented litigants and facilitating their filings are all directly related to the judicial process. *See*

*Sturkey*, 2024 WL 1606893, at *3; *Diaz-Granados v. Wright Med. Tech., Inc.*, No. 614CV1953ORL28TBS, 2016 WL 1090060, at *2 (M.D. Fla. Mar. 21, 2016).

Because quasi-judicial immunity protects Fahey, Ramberac, and Osborne from suit for actions related to their routine work in the state court clerk's office, allowing Scott to amend her claims against them would be futile. Thus, I dismiss these defendants from this action.

## IV.    CONCLUSION

After reviewing the record and Scott's arguments, I overrule Scott's objections, such as they exist, to the Magistrate Judge's conclusions. I agree with the Magistrate Judge that Scott failed to properly serve the judicial defendants and the claims against them should be dismissed. I adopt the Magistrate Judge's analysis regarding the other deficiencies with Scott's claims, which Scott did not provide any reason to question. Further, I agree with the Magistrate Judge that Scott's claims are too conclusory and vague as to state a plausible claim for relief. Indeed, they are so conclusory and vague that they constitute a shotgun pleading. Thus, I dismiss Scott's amended complaint. Because *Rooker-Feldman* bars Counts VI and VII and quasi-judicial immunity bars Scott's claims against Fahey, Ramberac, and Osborne, I dismiss Counts VI and VII with prejudice and dismiss Fahey, Ramberac, and Osborne from this action.

In sum, I overrule Scott's objections and adopt the Report and Recommendation with modifications: Counts VI and VII are dismissed with prejudice, Fahey, Ramberac, and Osborne are dismissed from the action, the motions to dismiss are denied as moot because I dismiss Scott's complaint as a shotgun pleading, and Scott may file another amended complaint against O'Melia that addresses the issues identified in this order and in the Report and Recommendation. Scott's amended complaint may not add new claims or new defendants.

Accordingly, the following is **ORDERED:**

1. Jaime Scott's Motion for Entry of Clerk's Default (Doc. 81) is **DENIED.**

2. Counts VI and VII of the amended complaint (Doc. 35) are **DISMISSED WITH PREJUDICE.**

3. The Clerk is directed to **TERMINATE** Judge Kimberly Sharpe Byrd, Judge Dustin Anderson, Judge Kemba Johnson Lewis, Beth Fahey, Stacey Osborne, and Adrian Ramberac from this action.

4. The remainder of Jaime Scott's amended complaint (Doc. 35) is **DISMISSED WITHOUT PREJUDICE.** No later than **February 10, 2026**, Scott may file an amended complaint against O'Melia that addresses the deficiencies identified in this order and in the Report

23

and Recommendation (Doc. 87). If Scott fails to timely file an amended complaint or files another shotgun complaint, this case will be dismissed without further notice.

5. O'Melia's Motion to Dismiss (Doc. 70) and Fahey, Osborne, and Ramberac's Motion to Dismiss (Doc. 84) are **DENIED AS MOOT.**

**ORDERED** in Tampa, Florida, on January 27, 2026.

Kathryn Kimball Mizelle
United States District Judge

24